**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINESOTA**

---

Abdiweli A. A.,

Petitioner,

v.

Markwayne Mullin, *Secretary, Department of Homeland Security*; David Venturella, *Acting Director of Immigration and Customs Enforcement*; David Easterwood, *Field Office Director of Enforcement and Removal Operations, Minneapolis – St. Paul Field Office, Immigration and Customs Enforcement*; Eric Tollefson, *Sheriff of Kandiyohi County, Minnesota, custodian of detainees at the Kandiyohi County Jail*;

Respondents.

No. 0:26-cv-04227-KMM-DTS

**ORDER**

---

Petitioner Abdiweli A. A. ("Petitioner" or "Abdiweli") has been detained by federal immigration authorities since he was arrested in North Dakota on July 29, 2026 at a routine check-in with U.S. Immigration and Customs Enforcement ("ICE"). On September 30, 2026, he brought this action by filing a Verified Petition for a Writ of Habeas Corpus. Pet., Dkt. 1. Abdiweli claims: (1) that Respondents arrested and detained him without a valid warrant or the probable cause required for a warrantless arrest; and (2) that Respondents failed to follow their own regulations by detaining him after his humanitarian parole expired without an individualized determination of whether his parole should be extended, thereby depriving him of due process. *See id.* at 39–44 (Claims for Relief). Respondents

argue that Abdiweli is lawfully in ICE custody as an "applicant for admission" subject to mandatory detention until the conclusion of removal proceedings under 8 U.S.C. § 1225(b)(2)(A). They assert that his due process claim cannot overcome that status as an "applicant for admission," and he cannot test the legality of his arrest in habeas proceedings. Resp. to Pet. at 1, Dkt. 6. For the reasons that follow, the Court concludes that Abdiweli is in custody in violation of the laws of the United States, 28 U.S.C. § 2241(c)(3), and his petition is, therefore, granted.

**BACKGROUND**

Abdiweli is a Somali national who entered the United States on foot in May 2023 near Otay Mesa, California. On May 6 or 7, 2023, Customs and Border Patrol ("CBP") arrested Abdidweli after he crossed the southern border of the United States. On May 11, 2023, Abdiweli was paroled into the United States pursuant to a grant of humanitarian parole under 8 U.S.C. § 1182(d)(5)(a). His parole was subject to conditions, including that he report to ICE as required. (Dkt. 2-1 at 3.) His humanitarian parole expired on July 5, 2023. (*See* Dkt. 7-3 at 1; Dkt. 2-1 at 4.) On December 10, 2023, Abdiweli filed an application for asylum and withholding of removal. He also applied for temporary protected status with U.S. Citizenship and Immigration Services ("USCIS") in December 2024. Both of those applications remain pending.

After Petitioner entered the United States, he moved to Minnesota where he has lived for the past three years. He has developed ties to the community, which includes several of his family members. Abdiweli has a valid work permit and no significant criminal history.

On July 29, 2026, Abdiweli voluntarily appeared for a routine ICE check-in at the ICE Enforcement and Removal Operations (“ERO”) Grand Forks Field Office in Grand Forks, North Dakota. When he arrived at the Grand Forks office, there were “space constraints in the ICE/ERO lobby,” so “Petitioner was escorted to the ICE/ERO processing area and informed that he was under arrest.” (Wederquist Decl. ¶ 7, Dkt. 7.) That same day, ICE/ERO issued a Notice to Appear (“NTA”), asserting that Abdiweli is subject to removal from the United States because he is inadmissible under 8 U.S.C. § 1182(a)(6)(A) and 1182(a)(7)(A)(i)(I). ICE/ERO also issued a Form I-200 warrant for Abdiweli’s arrest. (Wederquist Decl. ¶ 8.)

On August 12, 2026, consistent with the date identified in the NTA (Dkt. 7-1 at 1), Petitioner appeared before an Immigration Judge (“IJ”), arguing that he was eligible for release on bond (Dkt. 7-5 at 2). The IJ denied Petitioner’s request for a bond hearing, concluding that the Immigration Court “does not have authority to release [Petitioner] under [8 U.S.C. § 1225(b)(2)].” Dkt. 7-5 at 2 (citing *Avlia v. Bondi*, 170 F.4th (8th Cir. 2026) and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)). I Petitioner’s applications for relief from removal are set for a merits hearing before an IJ on November 3, 2026. (Wederquist Decl. ¶ 11.)

On September 30, 2026, Abdiwele filed his habeas petition, asserting several claims that Respondents violated his rights under the Constitution and federal law in taking him back into custody on July 29, 2026. (Pet., Dkt. 2.) He alleges that Respondents took him into custody without considering whether his parole should be extended for humanitarian purposes as required by regulations governing termination of parole. (Pet. at 14–26 (¶¶ 9–

48[1]); *see also* Pet. at 39–42 (¶¶ 98–113).) Abdiwele also asserts that Respondents violated the Administrative Procedure Act ("APA") by failing to evaluate him for extension of humanitarian parole and by failing to provide a reasoned explanation for his continued detention. (Pet. at 42–43 (¶¶ 114–20).) Further, he claims that Respondents unlawfully arrested and detained him without a valid warrant or the probable cause required for a warrantless arrest under 8 U.S.C. § 1357(a)(2). (Pet. at 26–37 (¶¶ 49–90); *see also* Pet. at 43–44 (¶¶ 121–26).)

## DISCUSSION

District courts may grant a petition for a writ of habeas corpus when the petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner has the burden of proving his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

### I. Unlawful Arrest Claim

Petitioner claims that he is entitled to an order requiring Respondents to immediately release him from custody because he was arrested unlawfully. There are "two mechanisms by which 'it is appropriate to arrest an alien during the removal process.'" *Cesar F.F. v. Blanche*, No. 26-cv-2540 (PJS/DTS), Dkt. 8 at 3 (D. Minn. June 2, 2026) [hereinafter *Cesar F.F.* Order] (quoting *Arizona v. United States*, 567 U.S. 387, 407 (2012)). First, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained

[1] At page 12 of the Petition, the numbering of the paragraphs restarts at 1. For the sake of clarity, the Court cites to the page numbers of the Petition along with the numbers of the paragraphs on those pages.

pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Second, the law allows for a warrantless arrest in limited circumstances. *See* 8 U.S.C. § 1357(a)(2).

Under the first mechanism, immigration authorities may arrest a noncitizen for the purposes of removal proceedings pursuant to an administrative warrant known as a Form I-200, Warrant of Arrest. *See* 8 C.F.R. § 236.1(b)(1). Such a warrant is valid when it is issued at the same time as ICE issues a notice to appear, or any time after the NTA has been issued. *Id.*; *Martha C.G.P. v. Blanche*, No. 26-cv-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D. Minn. May 13, 2026) ("Respondents may arrest a noncitizen using a Form I-200 only if the Form I-200 issues at the same time or after the Department of Homeland Security issues an NTA."). Courts have also held that an arrest is made "pursuant to" an I-200 warrant when the warrant is issued prior to that arrest. *Makitio G. A., v. Blanche*, No. 26-cv-2200 (ECT/DLM), 2026 WL 1584457, at *4 (D. Minn. May 22, 2026) ("[I]f a removal warrant for [the noncitizen] was not procured until ... after his ... arrest, that means he was arrested without a warrant."), *R&R adopted*, 2026 WL 1591270 (D. Minn. June 3, 2026); *cf. Pina C.D.B. v. Bondi*, No. 26-cv-1929 (KMM/DJF), 2026 WL 810676, at *2 (D.

Minn. Mar. 24, 2026) (collecting cases holding 8 U.S.C. § 1226(a)'s "[o]n a warrant" language to require the issuance of a warrant prior to arrest).[2]

The second means of arresting a noncitizen is under the warrantless-arrest authority provided in 8 U.S.C. § 1357. In the provision relevant here, such an arrest is permissible only if there is "reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2). By its plain language, § 1357(a)(2) contains two separate requirements: (1) that the individual is in the United States in violation of immigration laws; and (2) that he is likely to escape before a warrant can be obtained for his arrest. And in this context, "the term 'reason to believe' . . . means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

These rules require a court to consider first whether the arrest was made pursuant to a valid warrant, and if not, a court must then consider whether the arrest complied with the statute authorizing a warrantless arrest. Based on the Court's careful review of the record, the Court finds it is more likely than not that ICE/ERO arrested Abdiweli before any

[2] The Court notes that Respondents take the position that Abdiweli is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) because he is deemed an "applicant for admission" under that statute. *See Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). "Though § 1225 does not address warrants, [the Court] presume[s] for the sake of analysis that a valid administrative warrant under § 1226(a) is sufficient authority to subject an individual to mandatory detention under § 1225(b)(2)(A)." *Venancio P.J. v. Blanche*, No. 26-cv-2740 (ECT/JFD), 2026 WL 1862252, at *2 (D. Minn. June 29, 2026).

administrative warrant[3] was issued for his arrest, and Respondents did not have the probable cause necessary to effect a warrantless arrest of Abdiweli when that arrest was made.

***Arrest Pursuant to a Warrant***

There is somewhat limited evidence in the record concerning the timing of the issuance of the warrant and its relationship to Abdiweli's arrest. Petitioner alleges that ICE officers arrested him without a valid warrant, that they did not issue the warrant until after his arrest, and only served the Form I-200 warrant on him after he was escorted to processing and informed he was under arrest.[4] (Pet. at 2 (¶ 12), *id.* at 3 (¶ 18), *id.* at 8 (¶¶ 46–47).) There is a narrative report (a Form I-213 Record of Deportable/Inadmissible Alien) prepared by a Deportation Officer ("DO"), identified as K. Fleck, who was involved in Abdiweli's arrest. (Dkt. 7-2; Dkt. 2-3). Respondents also provided the Declaration of Supervisory Deportation and Detention Officer ("SDDO") Kolton Wederquist, who was not involved in the arrest. (Wederquist Decl., Dkt. 7.) And the parties have submitted the Form I-200 warrant itself, which was signed by another SDDO identified as D. Olson. (Dkt. 7-4; Dkt. 2-4.)

[3] There is no suggestion that Abdiweli was arrested pursuant to a warrant issued by a neutral and detached magistrate based on a showing of probable cause that he had committed a crime.

[4] The applicable DHS regulations do not require *service* of a Form I-200 warrant to occur prior to an arrest for the arrest to be valid. *See, e.g.*, *Sinan O. v. Noem*, No. 26-cv-386 (LMP/JFD), ECF No. 14 at 4–6 (D. Minn. Feb. 3, 2026). Accordingly, the Court does not grant relief in this case based on Petitioner's allegations that service was of the warrant did not take place until after he was arrested. The question is instead whether the warrant was issued prior to arrest.

As a preliminary matter, the Court is mindful that the burden of establishing that his custody is unlawful lies with the Petitioner. However, he has clearly alleged that his arrest took place before any warrant was issued, a detail that he cannot prove absent the disclosure of that information by the Respondents. Indeed, the timing of the issuance of any warrant in relationship to the arrest is peculiarly within the Respondents' knowledge because ICE/ERO agents both effected the arrest and issued the warrant. The fact that Respondents did not or could not provide evidence addressing the timing of the issuance of the warrant in relation to the arrest supports an inference that the evidence on that point is unfavorable to their position. *Cf. Renneger v. Aquawood, LLC*, 183 F.4th 997, 1005 (8th Cir. 2026) ("Generally, the adverse inference rule allows a judicial factfinder to 'draw an adverse inference when a party fails to produce highly probative evidence that it could readily obtain if in fact such evidence exists.'" (quoting *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 36 (2024))). The evidence in the record does not establish that the Form I-200 warrant for Abdiweli's arrest was issued before he was taken into custody.

DO Fleck's report states that SDDO Olson consulted with a duty attorney regarding Abdiweli's case at some point prior to Abdiweli's July 29th check-in at the ICE/ERO office in Grand Forks, determined that he should be arrested, and issued an NTA.[5] (Dkt. 2-3 at 2.) The report does not suggest that an I-200 warrant was prepared at that time or at any time before Abdiweli arrived at the ICE/ERO office for his check-in. DO Fleck states that at

[5] Given that the I-213 report suggests the decision to arrest Abdiweli came before his scheduled check-in, it is unclear why the I-200 warrant could not have been prepared and issued by SDDO Olson before Abdiweli ever arrived at the Grand Forks office.

some point after Abdiweli arrived at the ICE/ERO office, Abdiweli "was escorted to the ICE ERO processing area and advised he was under arrest." (*Id.*) Then Abdiweli "confirmed he is a citizen of Somalia and stated he has a Somalia passport at his apartment," and records checks confirmed Abdiweli's identity and his Somali citizenship. (*Id.*) DO Fleck states that Abdiweli "was administratively processed for removal and served a Notice to Appear an I-200." (*Id.*) But again, DO Fleck's narrative report says nothing about when the I-200 was issued.

This is not persuasive evidence demonstrating that the warrant was issued before Abdiweli's arrest. Critically, DO Fleck never states that the warrant was issued first and the arrest followed. This is so despite the reality that that the order of operations matters, and many habeas petitions have been granted due to this precise mistake. The Court has no choice here but to presume that if the warrant here preceded the arrest, the I-213 would have said so. Nor is there any other evidence from the officer that created the I-200 warrant establishing that it issued before Abdiweli was placed under arrest.

SDDO Wederquist's declaration does not support Respondents' position either. SDDO Wederquist's declaration is made under penalty of perjury, pursuant to 28 U.S.C. § 1746, but he largely repeats the description of events laid out in DO Fleck's Form I-213 report. (Wederquist Decl. ¶¶ 7–9.) Like DO Fleck's report, SDDO Wederquist's declaration does not affirmatively state that the arrest warrant issued prior to Abdiweli's arrest.

Finally, the warrant itself supports the Court's conclusion that Abdiweli was likely arrested first and the warrant issued later. The I-200 warrrant was issued and signed by an SDDO identified as D. Olson. (Dkt. 7-4.) The warrant is dated July 29, 2026, but there is

no timestamp on the document. The warrant commands authorized immigration officers to take Abdiweli into custody for removal proceedings under the Immigration and Nationality Act and states that SDDO Olson determined there is probable cause to believe Abdiweli is removable from the United States. (*Id.*) That determination is allegedly based on "biometric confirmation of the subject's identity and a records check of federal databases" indicating that Abdiweli lacks immigration status and is removably and "statements made voluntarily by the subject to an immigration officer" indicating that Abdiweli lacks immigration status. (*Id.*)

But there is no indication that Abdiweli made any admission that he lacked immigration status before he was informed that he was under arrest and taken into custody. The records checks and any biometric confirmation of Abdweli's identity also appear to have taken place *after* DO Fleck told Abdiweli he was under arrest. DO Fleck's narrative report of the July 29th encounter states that Abdiweli was taken to the "ICE ERO processing area and advised he was under arrest," and it later indicates that "IDENT results confirmed a match to [Abdiweli]" and that Abdiweli is a citizen of Somalia who had previously been temporarily paroled into the U.S. (*See* Dkt. 7-2 at 2.) Nor is there evidence from a witness in this case stating that biometric confirmation happened at an earlier date or took place before Abdiweli was arrested. *See Jaminton R.B. v. Mullin*, No. 26-cv-3091 (ECT/JFD), 2026 WL 2350324, at *2–3 (D. Minn. Aug. 13, 2026) (observing that "[b]iometric confirmation involves the measurement or analysis of a unique physical or behavioral characteristic (such as fingerprints)" and that the "record contains no information showing that biometric confirmation of Jaminton's identity occurred on or

before" the date the warrant was issued); *Sergio F.M. v. Blanche*, No. 26-CV-2749 (ECT/DTS), 2026 WL 2891386, at *2 (D. Minn. June 15, 2026) (reasoning that a Form I-200 warrant based on confirmation of biometric information was not issued prior to an arrest where "Petitioner's biometric information could have only been confirmed after Petitioner had been taken into custody") (quotation omitted), *report and recommendation adopted,* No. 26-CV-2749 (ECT/DTS), 2026 WL 1971992 (D. Minn. July 8, 2026). For these reasons, the Court finds that Abdiweli was not arrested pursuant to a valid administrative warrant.

Respondents' arguments to the contrary do not change the outcome. Respondents assert that they had probable cause to believe Petitioner was removable well before his July 29, 2026 arrest based on Petitioner's encounter with CBP in May 2023 when he crossed the border on foot. (Resp. at 29 (citing DO Fleck's Form I-213 report).) The Court agrees. But that addresses an issue that is not germane to Petitioner's unlawful-arrest claim. Whether the arresting ICE/ERO agents had probable cause to believe that Abdiweli was removable is a separate question from whether they arrested Abdiweli pursuant to a warrant issued before he was taken into custody. Like other federal agencies, ICE "literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *Venancio P.J. v. Blanche*, No. 26-cv-2740 (ECT/JFD), 2026 WL 1862252, at *2 (D. Minn. June 29, 2026) (quoting *Fed. Election Comm'n v. Ted Cruz for Senate*, 596 U.S. 289, 301 (2022) (cleaned up)). As outlined above, Congress gave Respondents the authority to make arrests: (1) on a warrant issued by the attorney general in connection with the initiation of removal proceedings in 8 U.S.C. § 1226(a); and (2) without a warrant

when the requirements of 8 U.S.C. § 1357 are satisfied. And here, with respect to the warrant issue, the Court finds that Petitioner was not arrested pursuant to a valid warrant.

***Warrantless Arrest Authority***

Having concluded that Respondents did not arrest Abdiwelli pursuant to a valid warrant, the next question is whether Respondents had authority to arrest him without a warrant. Before turning to the statutory requirements under 8 U.S.C. § 1357, however, the Court notes that Respondents appear to argue that they had the power to arrest Abdiweli simply by virtue of the fact that he is properly classified as an "applicant for admission" subject to mandatory detention for the duration of his removal proceedings under 8 U.S.C. § 1225(b)(2) and the interpretation of that statute in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). (*See* Resp. at 6–11.) That argument is unpersuasive. As other judges in this District have observed, "*Avila* did not decide the source or limits of the Government's authority to make a warrantless interior arrest." *Carlos F.P.P. v. Blanche*, No. CV 26-3123 (JWB/JFD), 2026 WL 2824801, at *5 (D. Minn. Sept. 21, 2026). And "§ 1225 contains no independent grant of arrest authority." *Id.* at *6. This Court agrees with the "great weight of persuasive authority from this District [that] supports the legal conclusion that a warrantless arrest under 8 U.S.C. § 1225(b)(2) must comply with § 1357." *Elder C.C. v. Blanche*, No. 26-cv-03832 (ECT/ECW), 2026 WL 3025948, at *2 (D. Minn. Oct. 8, 2026) (citing cases).

Turning to the requirements of § 1357(a)(2), recall that in relevant part it authorizes a warrantless arrest for civil immigration purposes where the arresting immigration officer has probable cause to believe that (1) the person is not lawfully present in the United States, and (2) the person is likely to escape before a warrant can be obtained. While Respondents

certainly argue that ICE/ERO agents had probable cause to believe Abdiweli was present in the United States without valid immigration status (Resp. at 29), they present no argument that they had reason to believe Abdiweli was likely to escape before a warrant could be obtained. Even if they had made that argument, there is nothing in the record to support the existence of probable cause to satisfy the likely-to-escape prong of § 1357(a)(2).

Whether a person is "likely to escape" before a warrant can be obtained within the meaning of the statute is determined based on whether he is "likely to evade detention by immigration officers," and the "analysis considers not just whether the noncitizen will be located at the scene of encounter with immigration enforcement but also whether immigration enforcement would be able to arrest the noncitizen at another clearly identifiable location." *Walther Ademir A.S. v. Blanche*, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (quotation omitted). Here, any suggestion that ICE/ERO agents could not have found Abdiweli again at a clearly identifiable location sometime after they gathered information on July 29, 2026 is belied by the record. For example, ICE officers knew Abdiweli's address in Grand Forks and were aware that USCIS approved his application for employment authorization in May 2024, indicating that "it was likely ICE officers would be able to locate [Abdiweli] after obtaining a warrant to arrest him" even if he had been allowed to leave the Grand Forks ICE/ERO office that day. *See Walther Ademir A.S.*, 2026 WL 1734906, at *3. And any suggestion that Abdiweli was likely to abscond and fail to appear for removal proceedings is undermined by his voluntary

appearance for a scheduled check-in with ICE and his ties to the community through his work and relationships with family members living near him.

For these reasons, the Court cannot find that Respondents had authority to arrest Petitioner without a warrant pursuant to 8 U.S.C. § 1357(a)(2), and the warrantless arrest did not comply with that statute.[6]

***Proper Remedy***

Petitioner requests that Respondents be ordered to release him from custody. (Pet. at 37–39 (¶¶ 91–97).) Respondents argue that even if Petitioner's arrest was unlawful, he is foreclosed from challenging his arrest in a habeas case given that he is now in removal proceedings before the immigration court. In support of that argument, they primarily rely on the Seventh Circuit's decision in *Arias v. Rogers*, 676 F.2d 1139, 1143–44 (7th Cir. 1982). (Resp. to Pet. at 24–28.) This Court has previously rejected the government's argument that an unlawful arrest cannot result in relief from custody in a habeas proceeding. *Emily Andreina N.V. v. Blanche*, No. 26-cv-2570 (KMM/EMB), 2026 WL 2209844, at *4–5 (D. Minn. July 31, 2026). And like other courts in this District, this Court "decline[s] to adopt *Arias* for the propositions that a habeas petitioner in removal proceedings cannot challenge an unlawful arrest or that release is not the appropriate remedy." *Elder C.C.*, 2026 WL 3025948, at *3; *Wilfredo C.M. v. Blanche*, No. CV 26-3966 (JRT/DJF), 2026 WL 2875061, at *2 (D. Minn. Sept. 24, 2026) (same).

[6] Because the Court concludes Abdiweli is entitled to habeas relief on his unlawful arrest claim, it does not consider his additional claim that Respondents violated the Constitution and federal law by arresting him without considering whether to extend his humanitarian parole.

Because the Court has concluded that Petitioner was not arrested pursuant to a warrant and Respondents did not have the probable cause required to make a warrantless arrest under § 1357(a)(2), the appropriate remedy in this case is relief from custody. *Munaf v. Green*, 553 U.S. 674, 693 (2008); *see also Elder C.C.*, 2026 WL 3025948, at *3 ("Because Elder's arrest was warrantless and because I conclude that Respondents have not shown that his arrest complied with § 1357(a)(2), Elder's Petition will be granted and he will be ordered released.").

**ORDER**

Consistent with the foregoing, **IT IS HEREBY ORDERED THAT:**

1. Petitioner Abdiweli A.'s Verified Petition for a Writ of Habeas (Dkt. 1) is **GRANTED**.

2. Respondents shall release Petitioner Abdiweli A. from immigration custody immediately.

3. Respondents shall file a status report with the Court within 48 hours of Petitioner's release advising that it has occurred.

**Let Judgment be entered accordingly**.

Date: November 6, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge